# EXHIBIT A

**U.S. Department of Justice**

Civil Division

JED:DEK:BELEY
D.J. No. 154-07-151

Tel. (202) 616-8254
Fax: (202) 514-8624

*Washington, D.C. 20530*

February 27, 2008

***Via Facsimile, Email and U.S. Mail***

Bruce Dickstein, Esq.
Dreifuss, Bonacci & Parker, LLP
26 Columbia Turnpike
Florham Park, NJ 07932

Re: *United States Fire Insurance Co. v. United States*, No. 07-151

Dear Mr. Dickstein:

I am writing to follow up on the status of a number of items that are responsive to the Government's initial request for production of documents, but which appear to have been absent from the collection of documents that United States Fire ("US Fire") produced to the Government for review in January. To the extent that you are in possession of the documents identified below, we respectfully request that they be produced. Alternatively, please provide us an explanation as to whether the documents requested are still in existence, and where, if they are not in your possession, they may be found.

**1. *Daily and Weekly Logs***

First, as you may recall, Request Nos. 5 and 24 in our document production requests sought "[a]ll reports prepared by LCM, its subcontractors, or any other entity on behalf of LCM . . . including, but not limited to, Quality Control Reports, foreman reports, and superintendent reports, in addition to any other periodic or specific reports related to the project," as well as "[a]ll diaries, logs, and field books maintained by LCM's superintendent(s), Quality Control personnel, foremen, or any individual or entity acting on LCM's behalf that was prepared during the project." LCM's daily and weekly logs fall squarely within this definition. Based upon my team's review of US Fire's document production, it appears that the following logs were missing from US Fire's January production:

A. **LCM Daily Logs** of the type exemplified in Exhibit A to this letter for the following dates:

- 6/2/1998

- 7/3/1998
- 7/17/1998
- 8/12/1998
- 9/14/1998
- 10/6/1998
- 11/17/1998
- 12/14/1998
- 12/16/1998
- 6/8/99-6/18/99, inclusive
- 6/23/1999
- 6/25/1999
- 6/30/1999
- 7/9/1999
- 8/12/1999
- 8/18/1999
- 8/31/1999
- 9/23/99-10/3/99, inclusive
- 10/7/1999
- 10/14/1999
- 10/21/1999
- 11/8/1999
- 11/24/99
- 11/29/99-11/30/99, inclusive
- 12/30/1999
- 12/31/1999
- 1/5/2000
- 1/7/2000
- 1/14/2000
- 1/17/2000
- 1/21/2000
- 1/31/2000 through project end

**B. LCM Daily Log-Formal Contract**, of the type exemplified in Exhibit B to this letter, for the following dates:

- 4/4/98-4/12/98
- 6/13/98-6/21/98
- 7/11/98-7/19/98
- 8/8/98-8/16/98
- 9/25/98
- 10/12/98
- 10/14/98
- 10/16/98
- 10/26/98
- 11/7/98-11/15/98

- 11/21/98-12/13/98
- 12/19/98-12/27/98
- 8/10/99-8/13/99
- 10/9/9910/17/99
- 12/30/00-1/7/01
- 2/26/01-3/4/01
- 7/9/01-7/22/01
- 8/11/01-8/19/01
- 9/1/01-9/9/01
- 9/22/01-10/7/01
- 10/13/01-10/21/01
- 11/10/01-12/2/01
- 1/12/02- to end of project

2. ***Email Communications***

In Request No. 6, we requested the production of "[c]orrespondence of any type, including, but not limited to, final or draft versions of e-mails . . . whether by or between US Fire and LCM, LCM's subcontractors, suppliers, consultants, the architect, the VA, or any other public agency related to the project." The absence of such materials from the production was brought to your attention in January, and we respectfully request that you produce all such emails or explain why such correspondence was largely absent from your production.

3. ***Warner Documents***

In Requests Nos. 2, 26, 27, 28, 29, 30, 31, 32, 33, and 34, we requested "[a]ll working papers of Warner Construction Consultants, Inc.," "[a]ll documents related to the REA," "[a]ll documents relating to the costs claimed in sections 5.2 and 5.3 of the REA, including, but not limited to, Davis-Bacon certified payroll record reports, payroll records and registers, invoices for the period of contract performance and claimed delay period, the 'contemporaneous detailed accounting records that compiled and recorded [LCM's] costs' referred to on page 123 of the August 15, 2003 REA, and all schedules showing the manner in which the claimed costs in sections 5.2 and 5.3 were calculated," "[a]ll documents relating to the 'unresolved change orders' identified in section 5.4 of the REA," "[a]ll documents relating to or supporting the calculation of the value of the Change Order Proposals identified in Section 5.4 of the REA," "[a]ll documents relating to the 'backcharges to subcontractors' identified in section 5.5 of the REA," "[a]ll documents relating to or supporting the calculation of the value of the 'backcharges to subcontractors' identified in section 5.5 of the REA," "[a]ll documents relating to or supporting the claimed costs in Section 5.6 of the REA," and "[a]ll documents relating to section 5.8 of the REA."

It is my understanding from our discussions that you are largely unable to respond to these document requests, because Warner either recycled or destroyed all of its files with respect to this case. As I am sure you can appreciate, the destruction of documents, whether those documents comprise working papers or original files, may have a significant impact upon the

course of this litigation, including, but not limited to, settlement prospects. Accordingly, please provide me with an explanation of what specific documents and types of documents were destroyed, and when that destruction occurred relative to US Fire's pending claim and this litigation. Please also explain why this destruction in advance of litigation occurred.

4. ***Other Miscellaneous Documents***

You have mentioned in our discussions and correspondence that, due either to an ongoing privilege review or to inadvertence, five boxes, a set of invoices, and a CD of documents responsive to our document requests were not produced to my team for review in January. We had also discussed the possibility that the outstanding materials could be sent by overnight mail to me for my review. I am amenable to that approach. You may send the relevant materials via Federal Express to the following address:

A. Bondurant Eley
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW, Room 12064
Washington, D.C. 20005

5. ***Privilege Log***

You have mentioned to me on several occasions that a significant amount of documents is being withheld on the basis of privilege. I trust that you have completed your privilege review, and request that you send me the resulting log at your earliest convenience.

If you have any questions or concerns regarding the foregoing, please feel free to contact me at (202) 616-8254. Thank you for your cooperation in this matter.

Very truly yours,

A. Bondurant Eley
A. Bondurant Eley
Trial Attorney

# EXHIBIT B

**U.S. Department of Justice**

Civil Division

JED:DEK:BELEY
D.J. No. 154-07-151

Tel. (202) 616-8254
Fax: (202) 514-8624

*Washington, D.C. 20530*

March 3, 2008

***Via Facsimile, Email and U.S. Mail***

Bruce Dickstein, Esq.
Dreifuss, Bonacci & Parker, LLP
26 Columbia Turnpike
Florham Park, NJ 07932

Re: *United States Fire Insurance Co. v. United States*, No. 07-151

Dear Mr. Dickstein:

In the upcoming weeks I hope to depose Edward Black and Stephen Hopkins, as well as nine of the subcontractors whose claims United States Fire is passing through in the instant litigation. To that end, please advise me whether you will consent to my motion, pursuant to Rule 30(a)(2)(A), for leave of Court to take greater than ten depositions. I currently anticipate that the Government will take twelve depositions in this case, consisting of a deposition of your client's expert during expert discovery, and eleven fact depositions.

Please inform me whether you are authorized to accept service of a notice of deposition on behalf of the following eleven individuals and entities who are fact witnesses in this case: Mr. Hopkins, Mr. Black, S&L Plumbing and Heating, Blake Electric, Faigle Electric, Rockmore Contracting Corporation, Pramukh Glass, Pyramid Floor Covering, Chalgo Painting, and Arthur Lorenzon & Sons, Inc. If it is your position that the Government must obtain a subpoena for some or all of these witnesses, I would appreciate the courtesy of a quick response, so that I may arrange for service and allow the witnesses sufficient notice.

All of this being said, I have no conflicting commitments in the next three weeks, and am happy to work with you to find mutually agreeable times and locations for these depositions. Please let me know what is most convenient for you.

Very truly yours,

A. Bondurant Eley

A. Bondurant Eley
Trial Attorney

# EXHIBIT C

## Eley, Bondurant (CIV)

**From:** Bruce Dickstein [BDickstein@dbplawfirm.com]
**Sent:** Wednesday, February 27, 2008 3:50 PM
**To:** Eley, Bondurant (CIV)
**Subject:** RE: Defendant's Initial Interrogatories and Second Request for Production, United States Fire Ins. Co. v. United States, No. 07-151

I will respond to today's flurry of activity in due course. In the meantime, I am compelled to state that you have grossly mischaracterized my comments regarding Warner Consulting's workpapers at Point 3 of your (first) letter of today's date. Further, while your statement that the surety is "largely unable to respond to the[] document requests [described in the preceding paragraph of the letter]", regardless of the cause, may be wishful thinking on the Government's part, it most certainly is not accurate. Quite frankly, I find this type of posturing does not serve anyone's purpose in the long run. As noted, I will respond to your letters as soon as my schedule permits.

Bruce Dickstein, Esq.
Dreifuss, Bonacci & Parker, LLP
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
Telephone: (973) 514-1414
Telecopy: (973) 514-5959

---

Please note: The information contained in this e-mail message is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, do not read, copy, use or disclosed it to others. If you have received this message in error, please notify the sender immediately by replying to this message and then delete it from your system. Thank you.

-----Original Message-----
From: Eley, Bondurant (CIV) [mailto:Bondurant.Eley@usdoj.gov]
Sent: Wednesday, February 27, 2008 3:29 PM
To: Bruce Dickstein
Cc: Eley, Bondurant (CIV)
Subject: Defendant's Initial Interrogatories and Second Request for Production, United States Fire Ins. Co. v. United States, No. 07-151

-----Original Message-----
From: administrator@civ.usdoj.gov [mailto:administrator@civ.usdoj.gov]
Sent: Wednesday, February 27, 2008 3:12 PM
To: Eley, Bondurant (CIV)
Subject: Scanned image from lst12007-sm550b

DEVICE NAME: lst12007-sm550b
DEVICE MODEL: SHARP AR-M550U
LOCATION: LST 12007

FILE FORMAT: PDF MMR(G4)

# EXHIBIT D

**Eley, Bondurant (CIV)**

**From:** Bruce Dickstein [BDickstein@dbplawfirm.com]

**Sent:** Wednesday, March 05, 2008 2:01 PM

**To:** Eley, Bondurant (CIV)

**Subject:** US Fire v. US (Montrose VA/Castle Abatement)

I am writing from outside the office and understand that you called this afternoon. I am in the middle of preparing for a trial and should be able to give you a call tomorrow or Friday. Thank you.

Bruce Dickstein

# EXHIBIT E

Mr. Ken MacKenzie
General Counsel (02)
VA Central Office
810 Vermont Avenue, N.W.
Washington, D. C. 20420

CLAIM
US Fire Insurance Company
Contract V620C-469
Original Contract Specifications



SF 1442, Solicitation, Offer and Award
IFB 620-11-96
Project 620-96-115/116
Renovate Bldg. 4, wards A,B,C & D

| | |
|---|---|
| Item 7 (Alternate #6) | Replace resilient sheet flooring (RSF) in Room No's. C2-07, C2-07A and C2-08 with vinyl complsition tile (VCT) and pattern similar to Dayroom No. 240. |
| Item 8 (Alternate #7) | Replace FC in all rooms listed in the Wall Finish Schedule on Drawing No's. A-4 and A-5 with FS. |
| Item 9 (Alternate #8) | Replace FS and FC in all rooms listed in the Wall Finish Schedule on Drawing No's. A-4 and A-5 with P. |

It is anticipated that a single award will be made on the BASE BID, subject to the availability of funding. **OFFERS MUST BID ON EACH ITEM LISTED.**

**THE ITEMS LISTED BELOW MATCH EXISTING PRODUCTS AND EQUIPMENT USED THROUGHOUT THE HOSPITAL. IT HAS BEEN DETERMINED THAT ONLY ONE PRODUCT WILL MEET THE GOVERNMENT'S MINIMUM NEEDS AND THE VA WILL NOT ALLOW SUBMISSION OF "EQUAL" PRODUCTS ON THE ITEMS LISTED BELOW:**

**852.236-90 RESTRICTION ON SUBMISSION AND USE OF EQUAL PRODUCTS (NOV 1986)**

This clause applies to the following items:

| ITEM | MANUFACTURER |
|---|---|
| Locksets | Best Lock Co. |
| Locks | Best Lock Co. |

## GENERAL CONDITIONS

**1.1 52.252-2 Clauses Incorporated by Reference. (JUN 1988)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

(End of clause)

**52.202-1 Definitions. (OCT 1995) -- Alternate I (APR 1984)**

**52.203-3 Gratuities. (APR 1984)**

**52.203-5 Covenant Against Contingent Fees. (APR 1984)**

**52.203-7 Anti-Kickback Procedures. (JUL 1995)**

**52.203-10 Price or Fee Adjustment for Illegal or Improper Activity. (SEP 1990)**

**52.203-12 Limitation on Payments to Influence Certain Federal Transactions. (JAN 1990)**

**52.204-4 Printing/Copying Double-Sided on Recycled Paper. (MAY 1995)**

**52.209-6 Protecting the Governments Interest When Subcontracting With Contractors Debarred, Suspended, or Proposed for Debarment. (JUL 1995)**

**52.214-26 Audit and Records--Sealed Bidding. (OCT 1995)**

**52.214-27 Price Reduction for Defective Cost or Pricing Data - Modifications - Sealed Bidding. (OCT 1995)**

**52.214-28 Subcontractor Cost or Pricing Data - Modifications - Sealed Bidding. (OCT 1995)**

**52.214-29 Order of Precedence - Sealed Bidding. (JAN 1986)**

**52.219-8 Utilization of Small, Small Disadvantaged and Women-Owned Small Business Concerns. (OCT 1995)**

**52.222-1 Notice to the Government of Labor Disputes. (APR 1984)**

TAKEOVER AGREEMENT

| | |
|---|---|
| DATE: | ~~January~~ APRIL 6, 1998 (BD) |
| CONTRACT NUMBER: | V620C-469 |
| PROJECT/FACILITY NAME AND LOCATION: | Renovations of Building 4 Wards A, B, C, D at the FDR Veterans Affairs Hospital, Montrose, New York 10548 Project No. 620-96-115/116 |
| PRIME CONTRACTOR: | Castle Abatement Corp. 620 Ramsey Avenue Hillside, New Jersey 07205 |
| OWNER/CONTRACTING AUTHORITY: | Department of Veterans Affairs |
| CONTRACT DATE: | September 30, 1996 |
| TERMINATION DATE: | January ~~4~~ 6, 1998 (BD) |
| SURETY: | United States Fire Insurance Company |
| BOND NO.: | US-0208069 |
| PENAL AMOUNT: (Performance Bond) | $3,987,650.00 |
| PENAL AMOUNT: (Performance Bond) | $1,595,060.00 |

This Agreement, entered into on the date first noted above by and between the Department of Veterans Affairs (the "Department") and United States Fire Insurance Company (the "Surety"), a corporation having an administrative office at 518 Stuyvesant Avenue, Lyndhurst, New Jersey 07071.

WITNESSETH:

WHEREAS, Castle Abatement Corp. (the "Contractor") entered into a construction contract with the Department on September 30, 1996 in connection with a project known as "Renovations of Building ~~8~~ 4 (BD) Wards A, B, C, D, at the FDR Veterans Affairs Hospital Montrose, New York (all as described above, hereinafter the "Project" or "Contract"), having a price of $3,987,650.00.

WHEREAS, pursuant to the requirements of the Miller Act, as amended (40 U.S.C. §§ 270a-270f) and as a condition precedent to performance under the Contract, the Contractor was required to provide performance and payment bonds with good and sufficient surety; and

WHEREAS, the required performance and payment bond numbers US-0208069, naming the Contractor, as principal and the Surety, as surety, were tendered by the Contractor and accepted by the Department (the "Bonds"); and

WHEREAS, the Surety and Department engaged in discussions regarding the status of the Contract commencing not later than August 1997; and

8 BD

WHEREAS, the Department, by memorandum dated January 7, 1998, found that the approximately fifty (50%) percent of the Contract term had expired and that approximately ten (10%) of the Contract had been performed and further expressed concern regarding the ability of the Contractor to perform the work in an orderly and timely manner; and

WHEREAS, the findings mentioned in the immediately preceding paragraph were the results of the Department's own analysis and were reached without the assistance or guidance of the Surety; and

WHEREAS, the amounts paid to the Contractor as set forth below were based solely upon the Department's good faith conclusions and no monies were withheld, and no requisition request was reduced, by reason of any directive of the Surety; and

WHEREAS, by letter dated January 6, 1998, the Contractor advised both the Department and the Surety that it could not complete the Contract and that it was in default thereof; and

WHEREAS, the Department has now made demand against the Surety to meet its obligations under the Bonds; and

WHEREAS, the Surety has elected to complete performance under the Contract in order to satisfy its obligations under the Bonds, subject to the conditions and limitations hereof, and without waiving any rights and equities the Contractor may have against the Department by reason of the administration of the Contract or otherwise, and without waiving rights and equities against the Contractor, and such rights, defenses, and equities that are available to Surety by statute, under existing agreements, and under common law; and

WHEREAS, by reason of the Surety's potential liability for damages resulting from the default of under the Contract and the demand against the Bonds, the Surety has certain rights and interests in connection with the completion of the Contract work and for the application of the undisbursed funds available therefor.

NOW, THEREFORE, for and in consideration of the mutual promises, covenants, assignments, representations, and agreements contained herein, the parties hereto have agreed and do hereby agree as follows:

1. Surety hereby exercises its option to take over completion of the work remaining under the Contract, an outline of which is annexed hereto as Exhibit A, and will procure the performance of the Contract in accordance with its terms and conditions and on such different terms and conditions as may be subsequently agreed upon by Surety and the Department, and submits Landmark Construction and Management, Inc., as the completion contractor (hereinafter, the "Completion Contractor"), which Completion Contractor is accepted by the Department.

2. The provisions of the Contract and related specifications and drawings are incorporated herein by reference and shall have the same force and effect as though set forth herein in full text (the "Contract Documents"). In resolving conflicts or discrepancies between and among the Contract Documents, the terms set forth in any Contract Document prepared subsequent to the Department's termination of the Original Contract shall take precedence over any other Contract Document, and the terms set forth in the body of this Agreement shall take precedence over any and all other Contract Documents.

3. The Department represents to the Surety that the initial Contract amount of $[~~Insert~~ $3,987,650.00 has not been amended. The Department further represents that the Contractor has been paid the sum of ~~$335,295.00~~ 335,941., leaving a Contract balance, including retainage and monies earned by the Contractor, in the amount of ~~$3,652,355.00.~~ $3,651,709.00 CH BD

4. The Surety takes the position that an assessment of liquidated damages for any period prior to the new completion date set forth above would be improper. Without admitting the propriety of the Surety's position, the Department agrees to waive liquidated damages for the period prior to the new completion date set forth below. In the event that the Contract is not completed by the new completion date, the Department retains the right to assess liquidated damages against the Surety in accordance with the terms of the Contract for any delays beyond the completion date (but not for the period prior to the new completion agreement).

5. The date for completion of the contract by Surety under this Agreement is hereby extended until and including June 4, 1999. Surety will be entitled to extensions on the new completion date as authorized by the terms and conditions of the contract in the same manner and to the same extent that the Contractor would have been entitled to such extensions and reserves the right to make such claims.

6. Surety undertakes and agrees to take over and perform or to procure the performance of, all work and all other obligations of the Contract called for under the said Contract not presently completed or fulfilled, including the correction and repair of all defective workmanship. It is mutually agreed that all of the General and other Provisions of the Contract, and the plans and specifications thereof, and all change orders, time extensions, and supplemental agreements as well as such future modifications as shall hereinafter be issued, are incorporated into this Agreement as if set out at length.

7. The VA and the Surety hereby agree that the Surety shall be paid in accordance with and in the manner provided by the Contract subject to the following conditions:

a) The agreed amount of the unpaid contract balance shall be reduced by any withholding directed by the Department of Labor pursuant to the Davis-Bacon Act or Service Contract Act or other Act administered by that Department that relates. The Government agrees to promptly inform Surety of any claim by the Department of Labor so that Surety can conduct as investigation into the matter.

b) Any unpaid amounts earned by the Contractor including retained percentages and progress payments for work accomplished prior to termination, shall be subject to debts due the VA against the contractor, under the Contract, except to the extent that such unpaid earnings may be required to permit payment to the Surety of its actual costs and expenses incurred in the completion of the work.

c) In no event shall the Surety be entitled to be paid any amount in excess of its total expenditures necessarily made in completing the work and discharging its liabilities under the performance bond and not exceed the remaining contract balance of

8. Surety agrees to prepare, certify and submit its request for payment in accordance with the terms of the Contract. The Parties agree that invoices shall be submitted in the name of Surety, and the VA shall review all requests for payment and, upon approval, payment shall be forwarded to the Surety in accordance with the method of payments as described in the Contract, and the payment information provided by the Surety.

Surety will supply the VA with all records, documents and information reasonably available and necessary to properly verify claimed completion costs, and the vouchers or other evidence of the Surety's disbursements shall be prima facie evidence to the VA of the fact and extent of the Surety's same costs of completion.

9. It is expressly understood and agreed that the VA shall in no way be bound to any contractor or subcontractor, by the terms of this Agreement, and shall look only to the Surety for completion of the Contractor and for compliance with the terms of the Agreement.

10. Nothing in this Agreement will be in derogation of Surety's obligation to the VA under the Performance Bond given in connection with the Contract, for unpaid withholding taxes.

11. Nothing in this Agreement shall be construed as modifying, limiting or releasing Surety from its obligations to the VA under its performance and payment bonds for the Contract.

12. Nothing in this Agreement shall be construed as creating, altering, or abridging any rights of any party hereto or other person, arising out of any payment bond given under the Contract, or out of any payment under such bond.

13. Surety does hereby fully release the VA from any and all liability whatsoever in connection with any payments heretofore made by the VA to the Contractor.

14. Payments to the Surety to reimburse it for discharging its liabilities under the payment bond shall be only on authority of: A) mutual separate agreement between the VA and the Surety; B) determination of the Comptroller General as to payee and amount; or C) order of a court of competent jurisdiction.

15. The Department and Surety agree that the satisfactory completion of the Contract shall satisfy Surety's performance obligations under its Bond and under this Agreement. The Department represents to the Surety that the Contractor would have been required to complete the Contract had it not admitted to its default under the Contract, and that the Department has not therefore made any agreements with the Contractor that any item thereon would not have to be performed. The Department and the Surety agree to cooperate fully with each other in connection with he completion and acceptance of the project.

16. The Surety agrees to enter into a completion contract with the Completion Contractor, calling for the completion of all of the remaining work and contract requirements under the Contract. The Surety reserves the right to contract with such other persons or entities as may be required in the course of performance subject to the approval of the Department, which approval shall not be unreasonably withheld. However, the Surety remains responsible for completion of the work within the period allotted by this Agreement and bears the risk of any schedule impact caused by the replacement of the Completion Contractor during performance of the completion of the Contract.

17. Surety's designated construction representative shall be Stephen Hopkins of the Completion Contractor. On behalf of Surety, Mr. Hopkins will be the interpreter and judge of the acceptability of all claims, disputes, and other matters relating to the acceptability of the contract work or the interpretation of the requirements of the Contract Documents and claims made pursuant thereto for adjustments to the Contract price or Contract time.

18. The Completing Contractor subject to inspection and acceptance of the Department will make routine day-to-day operations and decisions as to the manner of performance. It is further acknowledged that no contractual relationship exists between the Completing Contractor and the Department as concerns this Contract, and that the Completing Contractor is responsible to the Surety, who in turn is responsible to the Department. The Surety reserves the right to terminate the Completing Contractor's contract at any time, but with written notice to the Department, and employ another completing contractor.

19. The execution of this Agreement shall not change the relationship of principal, obligee (the contractor, Castle Abatement), and surety now existing between the Contractor, the Department, and Surety. Furthermore, all obligations of the completing Contract shall run directly to Surety, in accordance with the terms and provisions of Surety's completion contract. Likewise, it is not the intention of the Department and Surety, by entering into this Agreement, to waiver, prejudice, or in any way adversely affect any claim or defense that the Contractor or the Department may have against each other except as stated to the contrary elsewhere, all of said claims or defenses being hereby expressly reserved, nor should anything in this Agreement be construed to waive, limit, alter, or amend any of Surety's obligations, rights, defenses, or liabilities under its performance and payment bonds issued to the Department pursuant to the Contract.

20. No rights shall accrue hereunder to or for the use of any other person, firm cooperation, or Departmental entity other than the parties hereto and their respective successors, assigns, and reinsures.

21. The Department recognizes that the Surety is or may be liable to unpaid suppliers and subcontractors of the contractor in accordance with its statutory obligations. The Department shall not retain or withhold any Contract funds on account of claims filed by unpaid suppliers and subcontractors.

22. The Department and Surety and their signatories hereto warrant that each has the power and authority to execute this Takeover Agreement.

23. This Takeover Agreement constitutes the entire agreement between the Department and Surety and supersedes any and all prior agreements, arrangements, and/or undertakings by and between them. This Agreement shall not in any way be revoked, amended, or modified without the prior written consent of the Department and Surety.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date hereinabove stated.

DEPARTMENT OF VETERANS AFFAIRS

By: Clarissa Harley

Title: Contracting Officer

Dated: 4/21/98

UNITED STATES FIRE INSURANCE COMPANY

By: [signature]

Title: AUTHORIZED REPRESENTATIVE V.P. GENERAL CLAIMS COUNSEL FOR UNIVERSAL BONDING INSURANCE COMPANY, Agent for US Fire

Dated: April 6, 1998